UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BERNABE ENCARNACION,

                           Petitioner

                                                                   DECISION AND ORDER

-vs-

                                                                     02-CV-6380 CJS

MICHAEL MCGINNIS,

                           Respondent.

_____

APPEARANCES

For the Petitioner:            Bernabe Encarnacion, *pro se*
                                   #91-B-0943
                                   Southport Correctional Facility
                                   P.O. Box 2000
                                   Pine City, New York 14871

For the Respondent:          Office of the New York State Attorney General
                                   Gary M. Levine, Esq., Assistant Attorney
                                   General, Of Counsel
                                   144 Exchange Boulevard, Suite 200
                                   Rochester, New York 14614

INTRODUCTION

     Bernabe Encarnacion ("Petitioner"), a prison inmate in the custody of the New York State Department of Correctional Services, was convicted of violating a prison disciplinary rule and sentenced to the Segregated Housing Unit ("SHU"). Petitioner now seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, vacating the disciplinary conviction. For the reasons that follow, the application is denied and this action is dismissed.

BACKGROUND

On August 10, 1996, while petitioner was an inmate at Auburn Correctional Facility ("Auburn"), he was involved in a fight in the prison yard that left another inmate dead.[1] Minutes after the fight was broken up by corrections staff, the inmate with whom petitioner had been fighting collapsed and died of multiple stab wounds sustained in the fight. Following the fight, an ice-pick-like weapon was recovered by a corrections officer. The New York State Police began an investigation of the homicide. The same day, Corrections Officer S. Thompson wrote a misbehavior report against petitioner for three rule violations: fighting, assault on inmate, and contraband weapon. The misbehavior report was served on petitioner on or about August 11, 1996. It appears that the New York State Department of Correctional Services ("DOCS") took no further action with regard to the misbehavior report, in light of the investigation by the State Police. However, for petitioner's own safety, and for institutional safety, petitioner was placed in administrative segregation for five months, after which time he was released into the general population at Elmira Correctional Facility ("Elmira").

Petitioner was eventually convicted, after a jury trial in Cayuga County Court, of two crimes: Murder in the Second Degree, in violation of New York Penal Law § 125.25[1]; and Promoting Prison Contraband in the First Degree, in violation of Penal Law § 205.25[2]. *See, People v. Encarnacion*, 269 A.D.2d 779, 703 N.Y.S.2d 412 (4th Dept. 2000), *lv. to app. den*. 94 NY2d 918, 708 N.Y.S.2d 358 (2000). Shortly

---

[1] Petitioner and this same inmate had previously fought on June 5, 1996. Following that incident, petitioner was issued a misbehavior report for fighting and for refusing a direct order. Petitioner was found guilty of those charges at a Tier II disciplinary hearing and sentenced to keeplock for 14 days, with loss of commissary and phone privileges.

thereafter, corrections staff charged petitioner with two disciplinary violations, arising from his criminal convictions. Specifically, petitioner was charged with two counts of violating 7 New York Code Rules and Regulations ("NYCRR") § 270.2, DOCS Standards of Inmate Behavior Rule 1.00, "Penal Law Offense," based upon his criminal convictions for murder and promoting prison contraband. A Tier III hearing on the charges was held on February 25, 1998. Petitioner requested a Spanish interpreter at the hearing. Although the hearing officer had evidence before him that petitioner was able to speak English, in an abundance of caution, he assigned petitioner an interpreter.[2] The hearing transcript does not indicate that petitioner had any difficulty understanding the hearing, or that his interpreter had any difficulty translating. Petitioner also requested that he be given documentation concerning the incident at Auburn, such as documents proving "the blood type of the victim," as well as "investigative reports and correspondence." However, the hearing officer denied the request, finding that the requested materials were irrelevant to whether or not petitioner had been convicted of the penal law offenses.[3] Petitioner readily admitted during the hearing that he had been convicted of murder and promoting prison contraband in connection with the fight at Auburn. Hearing transcript at 20, 24, 29, 32. Following the hearing, petitioner was found guilty and sentenced to 10 years in the Segregated

---

[2] The hearing officer, Captain Aidala, noted on the disposition sheet: "All indications are that this inmate speaks and understands English. However, he has refused to speak any English thus an interpreter was provided to him at this hearing."

[3] Hearing transcript at 21, 25-26, 28, 30. There is no indication that the hearing officer, working at Elmira, had the documents, generated and presumably kept at Auburn, that petitioner requested. Rather, the hearing officer told petitioner that he could seek to obtain the documents through a Freedom of Information Act request.

3

Housing Unit ("SHU"), with loss of five years of good time credit and privileges such as recreation, packages, commissary, and phone.  The DOCS Commissioner affirmed the superintendent's determination by decision dated May 5, 1998.

On or about July 13, 1998, petitioner commenced a proceeding challenging the disciplinary conviction in Supreme Court, Chemung County, pursuant to New York Civil Practice Law and Rules ("CPLR") Article 78.  Petitioner alleged that his disciplinary conviction should be set aside for the following reasons: 1) the conviction was illegal, because it was based upon the same incident in 1996 for which he had been issued the June 10, 1996 misbehavior report; 2) he was not allowed to present evidence at the hearing pertaining to the June 10, 1996 incident; and 3) the interpreter at the hearing was unqualified.  The Article 78 petition was based primarily on New York State cases interpreting New York statutes and regulations, however it also made reference to the 14th Amendment to the United States Constitution.  The Honorable Samuel J. Castellino, Justice of the Supreme Court, denied the petition by Decision and Judgment dated December 21, 1998.  In that regard, Justice Castellino made various findings of fact, including the following: 1) Petitioner was "provided copies of relevant documents that were available"; 2) petitioner "failed to demonstrate that he was prejudiced by any alleged inadequacies" with regard to his pre-hearing request for documents; 3) petitioner "was provided with a Spanish interpreter at the commencement of the hearing, even though there was evidence in the record that petitioner had participated in earlier disciplinary hearings in English"; 4) petitioner "made no objections during the course of the hearing regarding the ability of the interpreter; 5) "the misbehavior report . . . gave the petitioner adequate notice of the charges against him."

Petitioner then appealed to the New York State Supreme Court, Appellate Division, Third Department, which affirmed Justice Castellino's ruling by decision entered September 27, 2001. *Encarnacion v. Goord*, 286 A.D.2d 828, 730 N.Y.S.2d 578 (3d Dept. 2001).  The Appellate Division noted, in relevant part:

> Petitioner asserts that he received ineffective assistance from his employee assistant based upon the latter's failure to procure certain documents that petitioner had planned to submit in evidence.  The record discloses, however, that the documents in question concerned events leading up to petitioner's arrest and criminal conviction, evidence that was irrelevant to the sole issue to be resolved at the hearing, i.e., whether petitioner had been convicted of violations of the Penal Law.  Petitioner was provided with all of the available and relevant documents to which he was entitled . . . .
>
> ***
>
> Petitioner also takes issue with the Hearing Officer's preclusion of certain witnesses . . . .   As these witnesses did not have firsthand information as to whether petitioner had actually been convicted of the criminal charges that arose out of [the fight] incident, their testimony was irrelevant and properly excluded.
>
> ***
>
> We [also] find [petitioner's] contention [regarding the Spanish interpreter] lacking in merit as the record discloses that petitioner's proficiency in English had been evaluated at the facility and he had been given an ESL (English as a second language) rating of 5, a proficiency level at which an interpreter is generally deemed unnecessary.  Given his ability to speak and understand English, no interpreter was required.  Nonetheless, the hearing transcript discloses that an interpreter was called to the hearing . . . where he actively translated the proceedings into Spanish for petitioner.

The New York Court of Appeals denied petitioner leave to appeal on December 18, 2001. *Encarnacion v. Goord*, 97 N.Y.2d 606, 738 N.Y.S.2d 289 (2001).

Petitioner then commenced the subject proceeding pursuant to 28 U.S.C. § 2254.  He contends that his disciplinary convictions are unlawful because: 1) he was charged twice for the same offense; 2) he was denied records and supporting

5

documents at the hearing[4]; and 3) he was denied an adequate interpreter.

ANALYSIS

Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996,("AEDPA"),

> a federal court cannot grant a writ of habeas corpus unless the state court's proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id*. § 2254(d)(2).

*Davis v. Greiner*, — F.3d —, 2005 WL 2500690 at *5 (2nd Cir. 2005). In this regard,

> [a] decision is contrary to clearly established Federal law if it contradicts the governing law or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court. An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable. Instead, a federal court should review a state court's interpretation of federal law using a standard of objective reasonableness. The increment of incorrectness beyond error need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.

*Yung v. Walker*, 341 F.3d 104, 109-10 (2d Cir. 2003). Moreover,

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the

---

[4] Petitioner at times refers to this claim as one for ineffective assistance at the hearing, but in reality, petitioner is really only complaining because the Hearing Officer refused to allow petitioner to have the documents he requested or to have certain witnesses testify. However, as discussed further below, that evidence was irrelevant.

presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254(e)(1).

<u>Double Jeopardy Issue</u>

The Court will first address petitioner's contention that his disciplinary conviction is based on the same incident for which he was previously issued a misbehavior report, and that this violates his federal constitutional rights and his rights under New York State law.  Petitioner cites 7 NYCRR § 251-5.1, which states that a prison disciplinary hearing must be commenced within seven days.  He also cites cases holding that, if a disciplinary proceeding is not commenced within seven days, the misbehavior report must be dismissed and the inmate's record expunged. *See, e.g., Hicks v. Scully*, 159 A.D.2d 624, 552 NYS2d 684 (2d Dept. 1990).  This argument misses the point, since the conviction that he is challenging is not based on the June 10, 1996 misbehavior report, but rather his subsequent criminal convictions for Murder in the Second Degree and Promoting Prison Contraband in the First Degree.  Petitioner also alleges that he was subjected to double jeopardy, because the instant disciplinary conviction and the previous misbehavior report both arose from the same incident on June 10, 1996. However, "the double jeopardy clause is limited to criminal proceedings and does not pertain to prison disciplinary hearings." *Baker v. Finn*, No. 00 Civ. 3886 (DC),  2001 WL 1338919 at *3 (S.D.N.Y. Oct. 31, 2001) (*citing Bolanos v. Coughlin*, No. 91 Civ. 5330, 1993 WL 762112 at * 13 (S.D.N.Y. Oct. 15, 1993)); *Porter v. Coughlin*, 421 F.3d 141, 142 (2d Cir. 2005) ("[C]riminal prosecutions and prison disciplinary proceedings based on the same conduct do not implicate double jeopardy concerns.").

Due Process at the Hearing

Petitioner next alleges that the hearing officer denied him due process at the hearing, by not allowing him to introduce evidence pertaining to the events of June 10, 1996. In this regard, petitioner essentially wanted to re-litigate his criminal trial. However, the Court agrees that such evidence would have been irrelevant. *See*, 7 NYCRR § 254.5 ("The inmate may call witnesses on his behalf provided their testimony is material . . . ."). The Hearing Officer clearly explained to petitioner that the only issue to be decided at the hearing was whether or not petitioner had been convicted of the criminal charges set forth in the misbehavior report, and petitioner readily admitted that he had been convicted of those charges.

Adequacy of the Interpreter

Finally, petitioner has not shown that his assigned interpreter was inadequate. There is nothing in hearing transcript to indicate that the interpreter was having difficulty translating for petitioner. It appears clear, from petitioner's responses at the hearing, that he understood exactly what was happening. Even assuming *arguendo* that petitioner's translator had some difficulty translating, petitioner has not explained how he was prejudiced, since it is undisputed that he was convicted of the Penal Law offenses on which the disciplinary conviction is based.

CONCLUSION

Petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438,

444-45 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

    So Ordered.

Dated: Rochester, New York
       October 26, 2005

                                    ENTER:

                                    /s/ Charles J. Siragusa
                                  CHARLES J. SIRAGUSA
                                  United States District Judge